UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL RICHARDS,

    Plaintiff,

v.

JOHNSON & JOHNSON, INC.;
JOHNSON & JOHNSON CONSUMER PRODUCTS
COMPANIES,

    Defendants.

Civ. Action No. 05-3663 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

**I.    INTRODUCTION**

Plaintiff Michael Richards initiated this action against his employer, Johnson & Johnson Consumer Products Companies ("CPC"), as well as CPC's parent company, Johnson & Johnson, Inc. ("J&J") (collectively, "defendants"), alleging discrimination and retaliation based on Richards's race and age. He asserts causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD").[1]  Defendants now move for summary judgment.

**II.    JURISDICTION**

The Court has federal question jurisdiction over the Title VII and ADEA claims, *see* 28 U.S.C. §§ 1331, 1333; 42 U.S.C. § 2000e-5(f)(3); 29 U.S.C. § 626(c)(1), and pendent jurisdiction over the NJLAD claims, *see* 28 U.S.C. § 1367.  Venue is proper under 28 U.S.C. §

---

[1] Richards originally asserted additional claims under the New Jersey Civil Rights Act ("NJCRA"), the New Jersey Conscientious Employee Protection Act ("CEPA"), and various claims based on national origin. He has since withdrawn those claims.  *See* Plaintiff's Brief in Opposition to Motion for Summary Judgment ("Pl. Br.") at 5-7.

1391(b), as defendants are located in this district and all alleged discriminatory conduct occurred here.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must view the facts in the light most favorable to Richards, the non-moving party, and must accordingly draw all inferences in his favor.  *See Gray v. York Newspapers*, 957 F.2d 1070, 1080 (3d Cir. 1992).  The Court may not grant defendants' motion if there is evidence sufficient to allow a reasonable jury to return a verdict for Richards, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), or if the factual dispute is one "that might affect the outcome of the suit under the governing law . . . ." *Id.*  Defendants' burden, however, "may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In opposing the motion, Richards "may not rest upon mere allegations or denials of the . . . pleading"; instead, he must, "by affidavits or as otherwise provided in [Rule 56]," set forth "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986).

### IV.   FACTUAL BACKGROUND

Richards is a 48-year old Asian male and has been employed by CPC as a Senior Financial Analyst since July 24, 2000.  Plaintiff's Statement of Material Facts ("Pl. Facts") ¶¶ 5, 10.  He holds an undergraduate accounting degree from the University of Maryland, an MBA in finance from Cornell University, and is also a licensed Certified Public Accountant.  Affidavit of

Alan H. Schorr ("Schorr Aff.") Exh. B.  He alleges that approximately three months into his employment, CPC began subjecting him to a pattern of isolation and exclusion, after which Richards complained to his supervisor.  Pl. Facts ¶¶ 15-16.  Richards asserts that he repeatedly and unsuccessfully sought relief from this treatment by complaining to various personnel within CPC and J&J, including a J&J diversity compliance officer.  *Id.* ¶ 18; Schorr Aff. Exh. C.

Much of Richards's disparate treatment claims center on the ratings system that defendants use for assessing their employees' past performance and future potential.  Defendants use a protocol known as the "Standards of Leadership" when evaluating their employees.  This model consists of six factors:  Credo values, customer/marketplace focus, innovation, interdependent partnering, masters complexity, and organization/people development.  Schorr Aff. Exh. E.  Combining an employee's evaluation on each of these factors, the Standards of Leadership model rates potential on a 1-5 scale,[2] with 5 representing maximum potential:

> 5 — Individuals who are growth candidates with <u>very high potential for key Senior Management Positions</u>— business/technical unit leader, corporate functional leader and above contingent upon successful completion of their development plans.
>
> 4 — Individuals who can move up <u>more than one significant organizational level</u> contingent upon successful completion of their development plans.
>
> 3 — Individuals who can move up <u>one significant organizational level</u> contingent upon successful completion of their development plans.
>
> 2 — Individuals who are able to <u>accept other related/expanded responsibilities at the same or similar organizational level</u>.

---

[2] Some confusion surrounds the scale on which potential is rated.  Richards states in his brief and statement of material facts (and various individuals have testified likewise) that the potential rating is based on a 1-4 scale.  Pl. Br. at 5; Pl. Facts ¶ 21.  However, the exhibit which he cites (and which the Court quotes) lists the potential rating on a 1-5 scale.  Schorr Aff. Exh. F; *but see* Affidavit of David J. Reilly ("Reilly Aff.") Exhs. C (defining potential ratings on a 1-4 scale) & D, at 12:5-6 (same).  In any event, as will be discussed, Richards never received any potential rating higher than a "2."

3

> 1 —   Individuals who are <u>limited in potential</u> and have difficulty
>            at the current organizational level.

Pl. Br. at 13; Pl. Facts ¶ 21; Schorr Aff. Exh. F (underline in original).

For each review Richards received during the years 2000 to 2005, he received a potential rating of "2." He alleges that his review for 2000 was significantly delayed (while his colleagues received timely reviews), and only upon "going up the ladder for three months [did he] finally exert[] enough pressure to get his evaluation" in June 2001. Pl. Facts ¶ 22. Defendants assert that the delay was not based on any discriminatory treatment, but merely upon the workload of the supervisor responsible for giving the review. Defendants' Statement of Material Facts ("Def. Facts") ¶ 20.

Richards asserts that each year, despite having received an adequate performance rating and "high[]" ratings and critiques from his business partners within the various reviews, *see* Pl. Facts ¶¶ 24, 28, 33, 35, 37 (and exhibits cited therein), he received a "2" potential rating. In essence, he asserts that defendants discriminated and retaliated against him by assigning him these sub-par ratings, which effectively branded him as unpromotable within CPC and un-hirable throughout the J&J family. As evidence of the unduly low potential ratings which he alleges, Richards cites a 2002 "Standards of Leadership Award" that he received for taking on added responsibility during a transitional period. Pl. Br. at 15; Schorr Aff. Exh. I. The award form states in bold typeface at the bottom, "**Timely communication of the award is critical!**" Schorr Aff. Exh. I. Richards, however, did not learn that he had received the award for three months, *see id.* Exh. A at 103:20-25, nor did he receive the plaque normally awarded to winners of the award, *see id.* at 102:12-13. Richards also complains that while he received $1,250 in additional compensation for winning the award, the award form states that he should have

4

received 2.5%-10% of his annual compensation, which would have equated to $1978.21-$7,913.50. Pl. Br. at 16; Schorr Aff. Exh. I.

During this time, Richards was also applying for other positions within the J&J family (particularly within the J&J Treasury Department). He did not receive an offer of employment for any of these applications. (While he applied for approximately 72 positions, he focuses his claims of discrimination on 23 of them. *See* Pl. Br. at 21; Schorr Aff. Exh. N). He alleges that this result was not due to his qualifications, but as part of a discriminatory pattern against Asian and older workers generally, as well as a retaliatory mission against him specifically. Richards proffers additional statistical data regarding the 22 J&J positions which were filled (one position was never filled); of 343 total applicants, no Asian applicants were hired (despite a relatively large Asian applicant pool),[3] and only one applicant over the age of 40 was hired.

## V. DISCUSSION

### A. Legal Standards

Title VII of the Civil Rights Act of 1964 states in pertinent part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .
>
> It shall [also] be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

---

[3] Richards lists a total Asian applicant pool of 67. Pl. Br. at 22. Defendants argue that his number is skewed because Richards includes himself for each of the 23 positions. In any event, the Court is satisfied that the relative number of other Asian applicants, at least for purposes of this motion, is sufficiently large enough to be material.

42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," so long as the individual is "at least 40 years of age." 29 U.S.C. §§ 623(a)(1), 631(a). Likewise, the NJLAD makes it an unlawful employment practice "to refuse to hire or employ or to bar or to discharge or require to retire [an individual] . . . or to discriminate against such individual in compensation or in terms, conditions or privileges of employment" on the basis of, *inter alia*, the individual's race or age. N.J.S.A. § 10:5-12(a).

Under the traditional *McDonnell-Douglas* burden-shifting paradigm for analyzing employment discrimination and retaliation actions, the plaintiff has the initial and relatively light burden of establishing a *prima facie* case of discrimination and/or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).[4] The defendants must then posit a legitimate non-discriminatory justification in response thereto. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). If they do, the discriminatory and retaliatory inferences are dispelled, and the burden of going forward returns to the plaintiff once again to rebut those justifications as pretextual. *Id.*

To defeat summary judgment at the third stage of the *McDonnell-Douglas* analysis, the plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. To do this, the plaintiff may not nakedly refute the non-

---

[4] This burden-shifting rule applies to Richards's ADEA and NJLAD claims. *See Fuentes v. Perskie*, 32 F.3d 759, 764 n.6 (3d Cir. 1994) (*McDonnell Douglas* rule applies to ADEA claims where relevant); *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1114 n.5 (3d Cir. 1997) (en banc). For ease of reference, the Court speaks only of Title VII.

discriminatory justification as unbelievable on the one hand, but need not "adduce evidence directly contradicting the defendant's proffered legitimate explanations on the other." *Id.* To defeat summary judgment, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Id.* at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992) (emphasis inserted in *Fuentes*).[5]

### B. Analysis

Defendants characterize Richards's arguments in two broad categories. First, they argue that Richards alleges race and age discrimination based upon the perceived deficient ratings he received during his employment at CPC. Second, they argue that he alleges race and age discrimination based upon J&J's failure to hire him for the positions for which he applied. While this characterization is by no means out of left field, it oversimplifies. Richards has asserted ongoing, systematic, and continuous methods of discrimination and consequent retaliation. *See* Pl. Br. at 5. He argues that the alleged retaliatory conduct is intertwined and coterminous with many of the alleged primary acts of discrimination. In support, he has submitted statistical evidence regarding the positions for which defendants did not hire him, as well as other inferential evidence with respect to the middling potential ratings that he received throughout his employment at CPC. A reasonable inference is that these ratings contributed to defendants' repeated decisions not to promote or hire him; another is that the later ratings may also have been taken in retribution for Richards's complaints about his earlier ratings. Viewing

---

[5] Defendants cite *Zive v. Stanley Roberts, Inc.* 182 N.J. 436, 449 (2005) for the proposition that "plaintiff may not simply show that the employer's reason was false but also must demonstrate that the employer was motivated by discriminatory intent." Def. Br. at 10 (quoting *Zive*). The *Zive* Court later explicitly endorsed the standard set forth by *Fuentes*, *see Zive*, 182 N.J. at 455-56; this Court, therefore, notes that *Zive* and *Fuentes* are not in tension.

the facts in the light most favorable to Richards, and for the reasons that follow, the Court finds that the evidence of record, if believed, would permit a jury to render judgment for Richards. Accordingly, the Court will deny the motion for summary judgment.[6]

   1. *Prima Facie Case*

The elements of a *prima facie* case "must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996). Hence, the *prima facie* burdens that apply to Richards's discriminatory/retaliatory treatment claims will vary depending on the particular mode of unlawful action alleged. To establish a *prima facie* case of discriminatory treatment based on race or age, Richards must establish: (1) that he is a member of a protected class; (2) that he was performing his job at a level on par with his employer's legitimate expectations; (3) that he suffered an adverse employment action; and (4) that others outside plaintiff's protected class did not suffer similar action against them. *See Fabrikant v. Arthur J. Gallagher & Co.*, No. 04-4417, 2008 WL 281690, at *7 (App. Div. Feb. 4, 2004) (citing *Maher v. N.J. Transit Rail Operations, Inc.*, 125 N.J. 455, 480-81 (1991)). To establish a *prima facie* case of discriminatory failure to hire, Richards must show that he: (1) belongs to a protected class; (2) that he applied and was qualified for the positions for which he applied; (3) was rejected notwithstanding his adequate qualification; and (4) the employer continued to seek qualified applicants to fill the vacant position(s). *See Taylor v. Cherry Hill Bd. of Educ.*, 85 Fed. App'x 836, 839 (3d Cir. 2004); *Zive* 182 N.J. at 447; *Erickson v. Marsh & McLennan*, 117 N.J. 539, 550 (1990). Finally, to establish a *prima facie* case of retaliation, he must prove that: (1) he engaged in protected

---

[6] In support of their motion, defendants posit that summary judgment is warranted as to J&J regarding plaintiff's adverse ratings theory (because J&J never rated Richards) and as to CPC regarding plaintiff's failure to hire theory (because plaintiff never applied to any other positions within CPC). Def. Br. at 5-6, 18-19. This indeed may be the case; however, because the Court denies summary judgment on each theory (as applicable to the relevant defendant), and given the factual complexities discussed above, the Court declines to render partial summary judgment at this time.

activity; (2) defendants were aware of that protected activity; (3) defendants took some adverse action against him; and (4) "circumstances were sufficient to permit the inference that the protected activity was a contributing factor for the adverse action." *Hasan v. U.S. Dept. of Labor*, 545 F.3d 248, 251 (3d Cir. 2008).

Defendants do not dispute that Richards has established a *prima facie* case with respect to his failure to hire claims, *see* Defendants' Brief in Support of Summary Judgment ("Def. Br.") at 20-21, and half-heartedly claim that he has failed to meet his initial burden as to disparate treatment based on his potential ratings, *see* Def. Br. at 8-10. With respect to his retaliation claims, they argue that there is no causal nexus between his protected activity and any alleged adverse employment action. Def. Rep. Br. at 7.

As to failure to hire, there is no doubt that: (1) Richards belongs to a protected class (in fact, he belongs to two); (2) he was minimally qualified for the positions for which he applied; (3) defendants did not hire him for those positions; and (4) they thereafter hired individuals outside Richards's protected classes. With respect to his retaliation claims, the facts suggest that Richards engaged in protected activity by complaining to his superiors of the allegedly disparate treatment he received, thereafter received "inadequate" potential scores, was not hired for new positions, and was deprived of the full complement of benefits stemming from his Standards of Leadership Award. These facts are sufficient to shift the burden to defendants to proffer non-discriminatory justifications for their actions.[7]

---

[7] Defendants argue that Richards has not pointed to any evidence linking the lower ratings or other adverse employment actions to his intercompany complaints. Given the multitude of allegedly discriminatory ratings, as well as defendants' conduct relating to Richards's Standard of Leadership Award, *see infra*, the Court is satisfied that, under the totality of these circumstances, the temporal connection suffices to establish a threshold inference of retaliation. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638-39 (3d Cir. 1993) (timing of adverse employment action can "raise an inference of pretext which would make summary judgment for the employer inappropriate"); *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003); *but see El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 177 (App. Div. 2005) ("[M]ere

With respect to Richards's claims of discriminatory treatment based on his potential ratings, defendants argue that he has not satisfied the *prima facie* burden because the ratings themselves to not constitute an adverse employment action. *See* Def. Br. at 8-10.  Defendants cite *El-Sioufi v. St. Peter's University Hospital*, 382 N.J. Super. 145, 170 (App. Div. 2005) in support.  They emphasize that *El-Sioufi* espouses the view that "an unfavorable evaluation, unaccompanied by a demotion or similar action, is insufficient." *Id.*; Def. Br. at 9.  However, defendants misconstrue Richards's theory.  In opposing this motion, Richards argues, and the Court agrees, that he complains not merely about the ratings *qua* ratings; rather, he attacks the residual effects of the recurrent ratings that branded him as incapable of moving to a higher organizational level.  In the Court's judgment, this is a sufficient "similar action" such that the potential ratings gave the imprimatur to reject Richards's subsequent applications.[8]  Furthermore, Richards complains about a significant delay in receiving his evaluation for 2000.  Pl. Br. at 14 n.2; Pl. Facts ¶¶ 22-23.  While this fact standing alone may not give rise to an inference of discrimination, it does contribute to such a finding based on the entirety of circumstances presented.

Defendants also argue that Richards did not suffer an adverse employment action because his potential ratings were never lowered, but remained constant throughout his employment.  The Court remains unpersuaded.  The mere fact that defendants rated him the same each year does

---

temporal synchrony alone is insufficient to sustain plaintiff's prima facie case. Instead, we are required to examine the allegations of retaliation *in context rather than in isolation*.") (emphasis added).

[8] Defendants further argue that Richards has not "pointed to any record evidence which suggests that he was denied any positions solely because of his potential rating." Defendants' Reply Brief ("Def. Rep. Br.") at 6 (emphasis in original).  First, defendants themselves cite no authority for the proposition that less-than-stellar evaluations must be the *sole* cause of an adverse employment action (i.e. a failure to hire).  Second, because an employee having received a "2" potential rating is classified as able to accept other related/expanded responsibilities at the same or similar organizational level, but an employee having received a "3" is classified as being able to move up one organizational level, one need invoke only common sense and deductive reasoning to conclude, at least on a *prima facie* basis, that a "2" potential rating effectively prevented Richards from moving up the organizational chain.

not undermine his *prima facie* case; consistent discrimination is, after all, discrimination nonetheless.

Because defendants attack no other facet of Richards's *prima facie* proffer, the Court concludes that Richards has established a rebuttable presumption of discrimination.

### 2. *Non-Discriminatory Justifications*

In response to Richards's claims of discrimination based on his potential ratings and the jobs for which they failed to hire him, defendants' non-discriminatory justifications are straightforward, legitimate, and well-taken. Defendants argue that the potential ratings Richards received accurately reflected his potential for moving up in the company, and that therefore they do not reflect animus against minority or older workers. Defendants support this justification with a variety of documents: critiques and review forms submitted by Richards's business partners regarding his performance, letters and e-mails from CPC personnel responding to his complaints of mistreatment, and notifications of accuracy issues related to his performance. *See* Reilly Aff. Exhs. C, E, I, J, K, L, M, N, P.

As for the failure to hire theory, defendants assert several justifications for rejecting Richards's applications for certain positions within J&J (at least for eight of the positions for which Richards applied).[9] For each of the positions which defendants do assert a legitimate non-discriminatory reason for rejecting Richards's employment application, defendants give reasons why another applicant was hired. These reasons include the following:

- Two positions were at the director level, (two levels above Richards's current level at CPC), and two were at the manager level (one level above Richards's current level);

- Richards had not had recent public accounting or international finance experience;

---

[9] Defendants do not proffer non-discriminatory justifications for the remaining 15 J&J positions for which Richards applied, relying on their statute of limitations arguments, discussed below.

11

- Other candidates had high potential and/or had already held positions at the same managerial level as the applied-for positions;

- Concern regarding the length of time Richards had spent in his current position at CPC without moving to another position within the J&J family;

- Concern regarding Richards's leadership capabilities necessary for supervisory experience.

Def. Br. at 20-28 (and supporting materials cited therein). Having proffered such legitimate non-discriminatory justifications for their conduct, defendants have satisfied their burden of production, and to defeat summary judgment, Richards must now demonstrate triable issues of material fact as to whether those reasons were pretextual.

### 3. *Pretext*

Richards first attacks defendants' justifications by pointing to the Standards of Leadership Award which he received for having taken on added responsibility during a "very demanding" period. Schorr Aff. Exh. I. Richards claims that, contrary to company policy, the award was neither timely nor publicly communicated, and that he did not receive the plaque and full monetary bonus customarily bestowed upon other Standards of Leadership Award winners. Pl. Br. at 16. Defendants downplay the significance of this award and argue that the record does not establish any causal nexus with his allegedly unjustified potential ratings. *See* Def. Rep. Br. at 7. As to the former, defendants cannot simply slough off the import of the award by attributing it to "some additional work." *Id.* As Richards points out, the criteria comprising the potential rating are the same criteria upon which the award was based. Pl. Br. at 14-15; Schorr Aff. Exh. I. As to the latter, the Court is satisfied that under the circumstances presented, the contemporaneity of Richards's award with his claims of discrimination and retaliation could permit a factfinder to infer unlawful conduct. *See Josey v. John R. Hollingsworth Corp.*, 996 F.2d at 638-39 (acknowledging that the "timing of employee's dismissal, and the employer's

treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate"); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 62 (3d Cir. 1988) (timing of events surrounding an employee's dismissal may raise an inference of discrimination).

The employment statistics Richards offers, as to both age and race, also raise triable issues of fact. For instance, Richards submits data showing that, from 2001-2005, no CPC employee over 40 received a potential rating of "4;" only twice did such an "older" employee receive a rating of "3" (and both times the rating was given to the same employee); 18 times an over-40 employee, however, received a "2." *See* Pl. Br. at 20; Pl. Facts ¶ 78. On the other hand, "younger" employees received a potential rating of "4" 18 times, a rating of "3" 46 times, and a rating of "5" once. *Id.* This evidence, if believed, permits the rational inference that defendants systematically rated older workers such that promotions (either within CPC or throughout the J&J family) could not be had. Of course, these numbers are subject to rigorous scrutiny going forward.

Richards also offers another chart showing the age and race characteristics of the successful applicants to the positions for which Richards was rejected. *See* Pl. Br. at 22; Pl. Facts at ¶ 40; Schorr Aff. Exh. O.[10] For none of the 23 positions did defendants hire an Asian employee (it does appear that 5 non-Asian minority applicants were hired), and only once did they hire an applicant over 40 (as the chart shows, 10 successful applicants were older than 20, and 11 were older than 30. Again, this evidence could lead one to conclude that race or age was

---

[10] Defendants complain that the data underlying the second chart, appearing in Exhibit O to the Schorr Affidavit, is unauthenticated. Def. Rep. Br. at 7 n.4. Insofar as defendants challenge the authenticity of this data, they do not state the basis for the challenge (though presumably they do so because the exhibit lacks Bates labels). The Court will not rule at this time on the admissibility of the data, which was attached to Mr. Schorr's affidavit, and will assume without deciding that the evidence was produced during discovery. *See Morrison v. Carpenter Tech. Corp.*, 193 Fed. App'x 148, 153 n.1 (3d Cir. 2006) (refusing to consider summaries "*not* attached to an affidavit *or* authenticated in an affidavit") (emphasis added).

13

a motivating factor in defendants' hiring decisions. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 342 n.23 (1977) ("Fine tuning of the statistics could not have obscured the glaring absence of minorit[ies]. . . . The . . . inability to rebut the inference of discrimination came not from a misuse of statistics, but from the inexorable zero."); *cf. Riley v. Taylor*, 277 F.3d 261, 317 (3d Cir. 2001) (Becker, C.J., concurring) (invoking the "inexorable zero" in different context).

Defendants argue that Richards "incorrectly assumes that the only considerations relevant to the hiring decisions at issue are those listed in the chart." Def. Rep. Br. at 8 n.4. But "[t]o prevail at trial, [Richards] must prove not that the illegitimate factor was the *sole* reason for the decision, but that the illegitimate factor was a *determinative* factor in the adverse employment decision, that is, that but for the protected characteristic, the plaintiff would have been hired (or promoted)." *Fuentes*, 32 F.3d at 764 (citing *Hazen Paper Co. v. Biggins*, 113 S. Ct. 1701, 1706 (1993) (emphasis in original). The dearth of positive hiring decisions for those employees and applicants protected by Title VII, the ADEA, and the NJLAD, as evidenced by the statistical data Richards has submitted, raises sufficient "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendants'] proffered legitimate reasons for [their] action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Id.* at 765 (quoting *Ezold*, 983 F.2d at 527) (emphasis inserted in *Fuentes*).

Richards points to additional, position-by-position evidence suggesting that he was not promoted on account of his protected characteristics. *See* Pl. Br. at 32-39. These rebuttals include: (1) some of the successful candidates did not meet the posted minimum qualifications; (2) the desire to hire "high-potential" candidates is merely a euphemism for "younger"; (3) Richards possessed more "assets" than some of the successful candidates; and (4) Richards's consistent and discriminatory "2" potential rating caused the lack of mobility throughout his

tenure at CPC, thus further rendering him un-hirable for positions in which a breadth of experience was required.

The crux of Richards's non-statistical attack on defendants' asserted non-discriminatory justifications is that the hiring decisions were made without adequate consideration of the skills that Richards brought to the table, instead opting for other candidates lacking the minimum skills or qualifications necessary for the position. To be sure, defendants submit evidence supporting their hiring decisions that, if believed, would explain why Richards cannot successfully complain of discrimination. *See* Def. Rep. Br. at 9-14. But it is Richards's burden to show why defendants' justifications could be seen as pretextual, and he has done so. At this stage, he need not "meet [his] *ultimate* burden of persuasion on a summary judgment motion." *Kelly v. Bally's Grand, Inc.*, 285 N.J. Super. 422, 432 (App. Div. 1995) (emphasis added). He must only point to "some evidence" that would permit a jury to rationally find defendants' justifications "unworthy of credence." *Fuentes*, 32 F.3d at 764, 765 (quoting *Ezold*, 983 F.2d at 527). Viewing the facts in the light most favorable to Richards, the Court concludes that he has adduced evidence sufficient to require a factfinder's determination on the issue of pretext.

**C. Statutes of Limitations**

The parties have devoted considerable attention to the extant statutes of limitations issues, and the Court has saved them for last. Defendants argue that as many as 15 of Richards's separable claims based on his potential ratings at CPC and unsuccessful employment applications at J&J are time-barred for failure to file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Def. Br. at 6-8, 19-20. Further, defendants contend that many of the same claims are barred under the NJLAD for failure to commence the action within the specified limitations period. *Id.*

Title VII and the ADEA require an aggrieved employee to file, within the relevant limitations period, a charge with the EEOC before commencing suit in district court. 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d). Here, that period is 300 days from the alleged discriminatory acts. *Id.* Additionally, NJLAD provides a two-year statute of limitations. N.J.S.A. § 2A:14-2. It is undisputed that Richards filed a charge with the EEOC on September 27, 2004, and thereafter commenced this action on July 22, 2005. Pl. Facts ¶¶ 118, 120. Therefore, defendants argue that his Title VII and ADEA claims are untimely with respect to any ratings or rejections received before December 2, 2003, and that his parallel NJLAD claims are untimely with respect to those alleged unlawful actions occurring before July 22, 2003. Def. Br. at 7.

Richards invokes the "continuing violations" doctrine, which would permit a claim of ongoing discrimination to go forward even though some of the individual acts making up the claim occurred outside the limitations period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). In *Morgan*, the United States Supreme Court held that Title VII bars "discrete acts of discrimination or retaliation that occur outside the statutory time period," *id.* at 105, distinguishing them from those claims asserting a hostile work environment, which "cannot be said to occur on a particular day." *Id.* at 115. Richards argues that the New Jersey Supreme Court's holding in *Green v. Jersey City Board of Education*, 177 N.J. 434 (2003), permits the continuing violations doctrine to apply to all claims of retaliation. Pl. Br. at 27. *Green* held, however, only that retaliation "need not be a single discrete action." *Green*, 177 N.J. at 448. The New Jersey Supreme Court concluded that a retaliation claim "*can* include . . . many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." *Id.* (emphasis added). It did not hold that all retaliation claims inevitably give rise to continuing

violations analysis.  The Court agrees here that defendants' alleged actions are discrete (albeit related) acts, were independently actionable, and were not part of a single continuing violation.  Therefore, claims based on those positions for which Richards was denied before December 2, 2003 (as to Title VII and ADEA) and July 22, 2003 (as to NJLAD) are time-barred and thus not actionable.

The Court granted leave to Richards to file a supplemental letter brief regarding the recently enacted Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2 (2009) ("Fair Pay Act" or "Act"), and defendants have filed a letter brief in response.  Richards argues that the nature of the Fair Pay Act reincarnates the continuing violations doctrine.  Defendants respond that the Fair Pay Act reaches only claims of *compensatory* discrimination, and not the particular forms of discrimination that Richards asserts.  While the Act certainly contains expansive language in superseding the holding in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), it does not purport to overturn *Morgan*, and thus does not save otherwise untimely claims outside the discriminatory compensation context.  *See Leach v. Baylor Coll. of Med.*, No. 07-921, 2009 U.S. Dist. LEXIS 11845, at *50-51 (S.D. Tex. Feb. 17, 2009) ("The Fair Pay Act of 2009 only affects the *Ledbetter* decision with respect to the timeliness of discriminatory compensation claims. . . .  The rule set out in *Ledbetter* and prior cases [i.e., *Morgan*]—that 'current effects alone cannot breathe new life into prior uncharged discrimination'—is still binding law for Title VII disparate treatment cases involving discrete acts other than pay."); *Rowland v. Certainteed Corp.*, No. 08-3761, 2009 U.S. Dist. LEXIS 43706, at *15-19 (E.D. Pa. May 21, 2009) (rejecting application of Fair Pay Act to otherwise untimely failure to promote claims); *Vuong v. New York Life Ins. Co.*, No. 03-1075, 2009 WL 306391, at *7-9 (S.D.N.Y. Feb. 6, 2009) (same).  As a result, Richards's untimely claims continue to be barred, notwithstanding the Fair Pay Act.

The Act is not irrelevant, however. Section 2 states in pertinent part:

> With regard to any charge of discrimination under *any law*, nothing in this Act is intended to preclude or limit an aggrieved person's right to introduce evidence of an unlawful employment practice that has occurred outside the time for filing a charge of discrimination.

Fair Pay Act, Pub. L. No. 111-2, § 2(3) (emphasis added). Thus, while the Fair Pay Act does not save untimely discrimination claims outside the compensation context, it is quite apparent that the statute explicitly reaffirms the evidentiary principle enunciated in *Morgan*: that Title VII and the ADEA do not bar an employee from using time-barred acts as background evidence in support of other timely claims. *See Morgan*, 536 U.S. at 113 ("The existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar [him] from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. *Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim*.") (emphasis added). Defendants contend that "time-barred claims are, as a matter of law, not actionable . . . ." Def. Letter Br. at 3. True enough, but *Morgan* and the Fair Pay Act are the up-to-date, relevant legal authority that Richards's time-barred claims have independent evidentiary value with respect to those claims that remain viable. The challenge of implementing this "actionable" versus "evidentiary" dichotomy is an issue for trial.[11]

## VI. CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment is denied. An appropriate order will be entered.

---

[11] The Court also leaves for another day the issue of the four positions for which Richards was denied after the EEOC charge was filed. *See* Def. Br. at 25-28.

/s/  Katharine S. Hayden

KATHARINE S. HAYDEN, U.S.D.J.

19